UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO:   3:22-CV-389-RGJ
*Electronically Filed*

| | |
|---|---|
| **ASCENT PROPERTIES, LLC** | **PLAINTIFF** |
| v. | **JURY DEMANDED** |
| **THE CINCINNATI CASUALTY COMPANY** | **DEFENDANT** |

## COMPLAINT

COMES NOW the Plaintiff, Ascent Properties, LLC, by and through counsel, and respectfully submits its Complaint against The Cincinnati Casualty Company, as follows:

### PARTIES AND JURISDICTION

1. Plaintiff Ascent Properties, LLC (the "Plaintiff") is a Kentucky limited liability company with a principal office located at 333 E. Main Street, Suite 310, Louisville, Kentucky 40202. Plaintiff is authorized to conduct business in the Commonwealth of Kentucky and has one (1) member. The sole member of Plaintiff is BF Capital, Inc., a Kentucky corporation with its principal office located in Louisville, Kentucky.

2. At all times relevant hereto, Plaintiff was the owner of the commercial property located at 10101 Linn Station Rd, Louisville, Jefferson County, Kentucky 40223 (the "Insured Premises").

3. The Cincinnati Casualty Company ("Cincinnati") is an Ohio insurance company engaged in the business of insurance in the Commonwealth of Kentucky, including Jefferson County, Kentucky. Cincinnati is a foreign corporation domiciled in Ohio and maintains its

headquarters in the Ohio.

4. This Complaint originates as the result of a storm event with large hail that damaged the Insured Premises, and Cincinnati's unlawful actions in refusing to promptly and fully pay Plaintiff's claim for insurance proceeds.

5. Complete diversity of citizenship exists pursuant to 28 U.S.C. § 1332 and the amount in controversy, exclusive of interests and costs, exceeds $75,000.00. Venue is proper in this Court because the Insured Premises giving rise to the insurance dispute at issue is located in Jefferson County, Kentucky.

## FACTS

### The Policy & Insured Premises

6. At all times material hereto, Plaintiff was an insured pursuant to an insurance contract whereby Cincinnati agreed to insure the structures and improvements located on the Insured Premises against property damage, bearing Policy No. EPP 051 10 38 (the "Policy"). As relevant hereto, the term of the policy was November 14, 2018 to November 14, 2021.

7. A true and correct copy of the Policy is attached hereto as ***Exhibit 1*** and is incorporated by reference as if set forth verbatim.

8. At all times relevant hereto, the Insured Premises consisted of a commercial building located at 10101 Linn Station Rd, Louisville, Jefferson County, Kentucky 40223.

9. The Policy provided insurance coverage for accidental direct physical loss or damage to the building located on the Insured Premises. The Policy is an "all risks" policy, which means that it provides insurance coverage for all accidental direct physical loss of or damage to covered property within the policy period unless the loss is specifically excluded or limited in the Policy.

10. The Policy's coverage for the building on the Insured Premises was on a replacement cost value valuation basis.

11. The Policy also provides other benefits, all as set forth in the Policy.

12. Pursuant to the Policy, Plaintiff paid a premium to Cincinnati in exchange for insurance coverage. Plaintiff paid the required premiums at all times relevant to this Complaint.

### The Loss

13. On June 30, 2020, a storm event (involving large hail) struck the Insured Premises, causing substantial damage (the "Loss").

14. As a result of the Loss, the Insured Premises suffered accidental direct physical loss and damage, including but not limited to, damage to the HVAC units, roof, other exterior components, etc.

15. The HVAC units, roofing system, and other exterior components of the Insured Premises were in good condition prior to the Loss.

### The Insurance Claim

16. On July 29, 2021, as promptly as possible upon learning of the Loss, the Plaintiff notified Cincinnati of the Loss.

17. Cincinnati retained Kate Dicks, P.E., to investigate the damage sustained from the Loss and John Lavin to investigate the storm event. Mr. Lavin determined that the June 30, 2020 storm included hail that impacted the Insured Premises. Ms. Dicks concluded that the June 30, 2020 hailstorm caused damage to the building located on the Insured Premises.

18. By letter dated October 6, 2021, Cincinnati advised Plaintiff that it would make no payments to Plaintiff because the amount of loss estimated by Cincinnati was less than Plaintiff's $10,000 deductible.

### The Appraisal Demand

19. Plaintiff disagreed with the amount of the loss as calculated by Defendant.

20. Given the dispute as to the amount of the loss, Plaintiff demanded an appraisal pursuant to the Policy.

21. With respect to appraisal, the Policy provides:

> **Appraisal**
>
> If we and you disagree on the value of the property, the amount of Net Income and operating expense, or the amount of "loss", either may make written demand for an appraisal of the "loss". In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property, the amount of Net Income and operating expense, and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
>
> a.   Pay its chosen appraiser; and
> b.   Bear the other expenses of the appraisal and umpire equally.
>
> If there is an appraisal, we still retain our right to deny the claim.

22. Cincinnati agreed to proceed with the appraisal process and appointed its appraiser. Plaintiff likewise appointed an appraiser, and the two appraisers agreed to the selection of an umpire.

23. The appraisal process is currently ongoing and expected to be completed in the near future.

### Defendant's Refusal to Enter into a Tolling Agreement

24. Given the ongoing appraisal, Plaintiff requested that Cincinnati enter into a tolling agreement to toll any suit limitation deadlines until 60 days after the appraisal panel issues its appraisal award.

25. Cincinnati refused to enter into the requested tolling agreement.

### The Accrual of Plaintiff's Cause of Action

26. This Complaint is timely brought pursuant to the Policy and Kentucky law.

27. Plaintiff's cause of action against Cincinnati did not accrue until Plaintiff's receipt of Cincinnati's coverage position letter, dated October 6, 2021, in which Cincinnati refused to make payment under the Policy, thereby breaching the insurance contract.

28. Alternatively, and at a minimum, Plaintiff's cause of action against Cincinnati could not have accrued under Kentucky law before Plaintiff submitted its claim on July 29, 2021.

29. Pursuant to KRS § 304.14-370, this Complaint is deemed filed within one (1) year of the time in which Plaintiff's cause of action against Cincinnati accrued.

### The Loss is Compensable Pursuant to the Policy

30. Plaintiff fulfilled all of the duties after discovery of the Loss that were imposed upon it by the Policy.

31. The Policy was in effect at the time of the Loss, and the Loss is a compensable claim under the terms of the Policy. As it relates to the Loss, there is no applicable exclusion.

32. There is no reasonable coverage dispute concerning the Loss.

33. Cincinnati's refusal to promptly and fully pay the Plaintiff the amounts owed as a result of the Loss was without justification and was in bad faith.

34. Cincinnati's refusal to pay the money and benefits due and owing the Plaintiff under the Policy caused it to seek legal counsel and to initiate this Complaint to recover the insurance proceeds and/or other Policy benefits to which the Plaintiff is entitled.

35. Although the claims process is still ongoing and Plaintiff desires to resolve the claim through the ordinary course, as outlined by the Policy (including the ongoing appraisal),

Plaintiff files this lawsuit out of an abundance of caution and to avoid any claim by Cincinnati that Plaintiff failed to comply with the suit limitations clause as set forth in the Policy.

36. To date, Cincinnati has failed to make full payment to Plaintiff for its covered loss. Although the appraisal process is still pending, Plaintiff files this lawsuit in order to protect its rights.

## CAUSES OF ACTION

### Count I – Breach of Contract

37. The allegations contained in preceding paragraphs of this Complaint are incorporated herein by reference as if set forth verbatim.

38. The Policy issued by Cincinnati to the Plaintiff is a binding contract and is supported by valid consideration.

39. Cincinnati is in total, material breach of the Policy, and Cincinnati is liable to Plaintiff in the maximum amount allowed by the Policy for the Loss. Specifically, Cincinnati breached its contract with the Plaintiff by its failure and refusal to fully and promptly pay the amounts owed to Plaintiff pursuant to the Policy as a result of the Loss, as required by the terms of the Policy.

40. As a result of Cincinnati's breach of contract, Plaintiff sustained substantial compensable losses, including but not limited to, the value of the damage to the building located on the Insured Premises and all other policy benefits to which Plaintiff is entitled, as well as consequential damages.

41. Cincinnati is liable to the Plaintiff for its losses.

**Count II –Bad Faith**

42. The allegations contained in preceding paragraphs of this Complaint are incorporated by reference as if set forth verbatim.

43. Cincinnati had a duty to exercise good faith in dealing with the Plaintiff. Cincinnati's refusal to pay the amounts contractually owed to Plaintiff is arbitrary and capricious, and it constitutes bad faith.

44. The bad faith of Cincinnati is evidenced by the fact that, at all times hereto, Cincinnati knew, or reasonably should have known, that Plaintiff was justifiably relying on the money and benefits due under the terms of the Policy, as well as the actions of Cincinnati as set forth in the paragraphs below. Nevertheless, acting with conscious disregard for Plaintiff's rights and with the intention of causing, or willfully disregarding the probability of causing, unjust and cruel hardship on Plaintiff, Cincinnati consciously refused to pay Plaintiff's valid claim and withheld monies and benefits rightfully due the Plaintiff. Cincinnati was obligated to pay all contractual benefits owed Plaintiff as a result of the Loss, Cincinnati lacked a reasonable basis in law and fact for its refusal and failure to policy benefits to Plaintiff, Cincinnati knew there was no reasonable basis for its refusal and failure to pay the amounts owed to Plaintiff, and/or Cincinnati acted with reckless disregard for whether such a basis existed.

45. Cincinnati's bad faith is evidenced by all of the facts and allegations set forth above in this Complaint, together with the following actions or inactions by Cincinnati which were perpetuated with evil motive or with reckless indifference to the rights of the Plaintiff:

    a. Cincinnati's intentional or reckless failure to fully inform Plaintiff of its rights and obligations under the Policy;

    b. Cincinnati's intentional or reckless failure to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's claim when liability was reasonably clear;

    c. Cincinnati's intentional or reckless refusal to pay Plaintiff's claim and to otherwise honor its obligations under the Policy;

    d. Cincinnati's failure to perform a full and complete investigation with respect to the Loss;

    e. Cincinnati's intentional refusal to pay Plaintiff fully for its covered losses; and

    f. Cincinnati's intentional failure to pay all amounts due and owing under the Policy with no reasonable or justifiable basis.

46. In so acting, Cincinnati intended to and did injure the Plaintiff in order to protect its own financial interests and should be punished.

**Count III – Violations of the Unfair Claims Settlement Practices Act**

47. The allegations contained in the preceding paragraphs of this Complaint are incorporated by reference as if set forth verbatim.

48. Cincinnati has violated KRS § 304.12-230 (the Unfair Claims Settlement Practices Act), resulting in damage and harm to the Plaintiff for which Cincinnati is liable pursuant to KRS § 446.070.

**Count IV – Violation of KRS 304.12-235**

49. The allegations contained in the preceding paragraphs of this Complaint are incorporated by reference as if set forth verbatim.

50. Cincinnati's failure to promptly and fully pay all amounts owed to Plaintiff as a result of the Loss was and is without reasonable foundation. Cincinnati failed to make a good faith

attempt to settle Plaintiff's claim within 30 days, and Cincinnati owes Plaintiff interest at the rate of 12% from 30 days after the filing of notice and proof of Plaintiff's claim until paid on the final claim payment.

51. Cincinnati failed to settle Plaintiff's claim within 30 days of being provided adequate information to adjust the claim, and its delay was without reasonable foundation. Plaintiff is entitled to recovery of its attorney's fees and costs incurred in obtaining a claim settlement.

**Count V – Violation of Consumer Protection Act – KRS 367.110 *et seq.***

52. The allegations contained in the preceding paragraphs of this Complaint are incorporated by reference as if set forth verbatim.

53. The insurance coverage purchased by Plaintiff qualifies as a service intended to be protected by Kentucky's Consumer Protection Act, KRS § 367.110 through KRS § 367.360.

54. Cincinnati made false, unfair, misleading, and/or deceptive statements in advising Plaintiff that it would have insurance for covered losses and financial protection at the time it purchased the Policy.

55. Cincinnati made false, unfair, misleading, and/or deceptive statements during the claim process by refusing payment of Plaintiff's valid claim without a reasonable basis.

56. Cincinnati engaged in unfair, false, misleading, and/or deceptive practices with respect to Plaintiff's claim, as set forth above in this Complaint.

57. Plaintiff suffered an ascertainable loss of money or property as a result of Cincinnati's unlawful methods, acts, and practices.

58. Plaintiff is entitled to compensatory and punitive damages, attorney's fees, and costs for Cincinnati's violations of the Consumer Protection Act.

**WHEREFORE**, as a result of the foregoing, Plaintiff would respectfully request that this Honorable Court award a judgment against Cincinnati as follows:

A. For performance of the Policy and for compensatory damages as a result of Cincinnati's breach of contract in an amount to be determined by the jury;

B. For compensatory damages for inconvenience, financial distress, and worry in an amount to be determined by the jury;

C. For punitive damages in an amount to be determined by the jury;

D. For reasonable attorney's fees pursuant to KRS § 304.12-235, the Consumer Protection Act, and other laws;

E. For all costs incurred by Plaintiff as a result of this action;

F. For pre- and post-judgment interest;

G. For statutory interest on the final claim payment at 12% interest; and

H. For such other further and general relief as this Court deems just and equitable.

## JURY DEMAND

Plaintiff demands a jury.

Respectfully submitted,

McWHERTER SCOTT BOBBITT, PLC

*s/ Clinton H. Scott*
CLINTON H. SCOTT (KYBN 95862)
clint@msb.law
54 Exeter Rd., Suite D
Jackson, Tennessee 38305
(731) 664-1340

*Attorney for the Plaintiff*